**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

                          Case No.  08-30051

ERIC C. ROSE

       Debtor

**MEMORANDUM ON
<u>OBJECTION TO CLAIM</u>**

**APPEARANCES:**   GAIL F. WORTLEY, ESQ.
  3715 Powers Street
  Knoxville, Tennessee  37917
  Attorney for Debtor

                     HODGES, DOUGHTY & CARSON, PLLC
  Thomas H. Dickenson, Esq.
  Kandi R. Yeager, Esq.
  Post Office Box 869
  Knoxville, Tennessee  37901-0869
  Attorneys for Hillary Dewhirst

                     GWENDOLYN M. KERNEY, ESQ.
  Post Office Box 228
  Knoxville, Tennessee  37901-0227
  Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Claim filed by the Debtor on March 26, 2008, objecting to the allowance of the claim filed by Hillary Dewhirst on February 13, 2008, in the amount of $1,850.00 as a priority domestic support obligation and seeking to allow it as a general unsecured claim. Ms. Dewhirst filed the Response of Hillary Dewhirst to Debtor's Objection to Claim on March 31, 2008, arguing that her claim is a domestic support obligation entitled to priority.

At a preliminary hearing held on April 23, 2008, the parties agreed that the matter could be decided upon stipulations and briefs. Pursuant to the scheduling Order entered on May 5, 2008, the parties filed Stipulations of Facts and Documents Related to Debtor's Objection to the Priority Claim Filed By Hillary Dewhirst (Stipulations) on May 7, 2008, accompanied by the following exhibits: (A) Order Appointing Guardian Ad Litem and Allowing Discovery entered in the Juvenile Court for Knox County, Tennessee, on March 14, 2006, appointing Ms. Dewhirst as guardian ad litem; and (B) Order of Judgement entered in the Juvenile Court for Knox County, Tennessee, on January 2, 2008, *nunc pro tunc* to August 22, 2007, granting Ms. Dewhirst a judgment against the Debtor in the amount of $1,850.00. The court also takes judicial notice of material undisputed facts of record in the Debtor's bankruptcy case file. *See* FED. R. EVID. 201.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(B) (2008).

I

On March 14, 2006, an Order Appointing Guardian Ad Litem and Allowing Discovery was entered in the Juvenile Court for Knox County, Tennessee, in the case of *In re B.R.*, No. 32155,

appointing Hillary Dewhirst as guardian ad litem to represent the minor child "[f]rom the filing of the dependency petition through disposition; [i]n post disposition, foster care review and permanency proceedings; [and f]rom the filing of the termination of parental rights petition to conclusion of trial[.]" STIPS. at ¶ 1; EX. A. Thereafter, an Order of Judgement (Judgment) was entered on January 2, 2008, *nunc pro tunc* to August 22, 2007, awarding Ms. Dewhirst a judgment against the Debtor, the father of the minor child, in the amount of $1,850.00 for guardian ad litem's fees the Debtor was ordered to pay on January 11, 2007. STIPS. at ¶ 2; EX. B. Prior to entering the Judgment, which had been prepared by Ms. Dewhirst, the Referee struck language stating that "[t]his is a judgment that is an incident of Child Support" and inserted the following handwritten phrase: "for which execution may issue."[1] EX. B. The Referee also struck language that "this judgment is subject to interest at 10 percent (10%) per annum." EX. B.

The Debtor filed the Voluntary Petition commencing his Chapter 13 bankruptcy case on January 7, 2008. On February 13, 2008, Ms. Dewhirst filed her claim, asserting that the $1,850.00 Judgment for her guardian ad litem fees is entitled to a priority of payment as a domestic support obligation. Pursuant to the scheduling Order entered on May 5, 2008, the sole issue before the court is whether the claim of Ms. Dewhirst is entitled to payment through the Debtor's Plan as a priority claim or is entitled to be paid as a general unsecured claim.[2]

---

[1] As drafted and presented to the Referee by Ms. Dewhirst, the Judgment provided, in material part, "[t]hat the Guardian *ad Litem* is awarded a judgment against Eric Rose in the amount of one thousand eight hundred and fifty dollars ($1,850.00). This is a judgment that is an incident of Child Support." As entered on the docket with the Referee's handwritten edits, the Judgment provides "[t]hat the Guardian *ad Litem* is awarded a judgment against Eric Rose in the amount of one thousand eight hundred and fifty dollars ($1,850.00)[,] for which execution may issue."

[2] Also on May 5, 2008, the court entered an Order Confirming Chapter 13 Plan, wherein the Debtor is required to make payments to the Trustee in the amount of $280.00 per week for sixty months, plus all tax refunds in excess of

(continued...)

3

## II

"A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Furthermore, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a) (2005); *see also* FED. R. BANKR. P. 3007 (setting forth the procedure for objections to claims). The objecting party then bears the burden of "presenting evidence to rebut or cast doubt upon, the creditor's proof of claim . . . [and] produc[ing] evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency[,] . . . [at which point], the burden reverts to the claimant to provide the validity of the claim . . . by a preponderance of the evidence." *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (quoting *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)).

The Debtor objects to allowing priority treatment of Ms. Dewhirst's claim, arguing that it does not fit within the scope of 11 U.S.C. § 507(a)(1), which provides in material part:

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing

---

²(...continued)
$1,000.00, with payment in full to unsecured priority creditors and payment of a 5-20% dividend to general unsecured nonpriority creditors.

of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C. § 507(a)(1) (2005).  Conversely, Ms. Dewhirst argues that her claim is a "domestic support obligation," as that term is defined in the Bankruptcy Code, and is, therefore, entitled to a priority payment under § 507(a)(1).

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> > (A) owed to or recoverable by—
> >
> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > >
> > > (ii) a governmental unit;
> >
> > (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> >
> > (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> >
> > > (i) a separation agreement, divorce decree, or property settlement agreement;
> > >
> > > (ii) an order of a court of record; or
> > >
> > > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> >
> > (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

5

11 U.S.C. § 101(14A) (2005).

The term domestic support obligation is "derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former [§] 523(a)(5); therefore, case law construing the former [§] 523(a)(5) is relevant and persuasive." *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 612 (E.D. Wis. 2008) (quoting *In re Johnson*, 2008 Bankr. LEXIS 650, at *13-14, 2008 WL 553221, at *5 (Bankr. M.D.N.C. Feb. 27, 2008)). While state law must be considered, whether a debt falls within the definition of a domestic support obligation is a matter of federal law, and because the inquiry is controlled by federal rather than state law, "a domestic support obligation can be deemed actually in the nature of support under § 523(a)(5) even if it is not considered 'support' under state law." *Strickland v. Shannon*, 90 F.3d 444, 446 (11th Cir. 1996); *see also In the Matter of M.A.R.*, 183 S.W.3d 652, 669 (Tenn. Ct. App. 2005) (holding that "[w]hile the federal bankruptcy court may look to state law when determining the treatment to be given the guardian ad litem fees awarded in this case, it is entirely within the province of the federal bankruptcy court, not this court, to determine the applicability of § 523(a)(5) to such fees.").

When faced with the question of whether guardian ad litem fees are nondischargeable domestic support obligations, the courts have answered overwhelmingly in the affirmative. *See, e.g., Beaupied v. Chang (In re Chang)*, 163 F.3d 1138 (9th Cir. 1998) (affirming the bankruptcy court's ruling that California law permitted the appointment and provided for compensation of guardians ad litem and that in consideration of the child's best interests, such fees were nondischargeable under § 523(a)(5) and entitled to priority treatment under § 507(a)); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487 (10th Cir. 1995) ("[D]ebts to a guardian ad litem, who is specifically charged with representing

6

the child's best interests, and a psychologist hired to evaluate the family in child custody proceedings, can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding."); *Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940, 941 (5th Cir. 1993) (holding that since the guardian ad litem's fees were incurred during a court proceeding for the child's benefit and support, they were nondischargeable under § 523(a)(5)); *Baskin & Baskin, P.C. v. Carlucci (In re Carlucci)*, 2007 Bankr. LEXIS 1567, at *5 (Bankr. N.D. Ga. Mar. 13, 2007) (holding that since the role of the guardian ad litem, under Georgia law, was to protect the interests of the child and investigate and present evidence on the child's behalf, her role related directly to the welfare and support of the child); *Green County Corp. Counsel v. Kline*, 2006 Bankr. LEXIS 2848, at *10-11 (Bankr. W.D. Wis. Apr. 12, 2006) (holding that although court proceedings concerning statutory actions, including termination of parental rights, placement, and paternity, "are not all related to the financial support of the child, they are related to the child's welfare and the guardian ad litem's responsibility is to be an advocate for the best interests of the child[,]" such that fees are in the nature of support for the purposes of § 523(a)(5)); *Walter v. Neville (In re Neville)*, 1997 Bankr. LEXIS 1106, at *4 (Bankr. W.D. Tenn. July 22, 1997) ("The Court has no difficulty in finding that Mr. Walter's work was of benefit to the minor child and that the role of a guardian ad litem was necessary for the protection of the child's best interests."); *Lawson v. Lever (In re Lever)*, 174 B.R. 936, 942 (Bankr. N.D. Ohio 1991) ("The statutory purposes and duties of a [guardian ad litem] are premised to provide support for the minor child.").

The foregoing cases can be summarized by the following premise:

[T]he best interests of the child is an inseparable element of the child's "support" –
put another way, 11 U.S.C. 523(a)(5) should be read as using the term "support" in

a realistic manner; the term should not be read so narrowly as to exclude everything bearing on the welfare of the child but the bare paying of bills on the child's behalf.

*Jones v. Jones (In re Jones)*, 9 F.3d 878 (10th Cir. 1993) (quoting *Holtz v. Poe (In re Poe)*, 118 B.R. 809, 812 (Bankr. N.D. Okla. 1990)).

The Order Appointing Guardian Ad Litem and Allowing Discovery, entered in the Knox County Juvenile Court on March 14, 2006, appoints Ms. Dewhirst as guardian ad litem in a "matter involv[ing] a petition alleging dependency or termination of parental rights and . . . the appointment of a guardian ad litem for the above-named child(ren) is required, pursuant to T.C.A. § 37-1-149." STIP. EX. A. Tennessee Code Annotated § 37-1-149, entitled "Guardian ad litem – Special advocate – Appointment," provides:

> (a)(1) The court at any stage of a proceeding under this part, on application of a party or on its own motion, shall appoint a guardian ad litem for a child who is a party to the proceeding if such child has no parent, guardian or custodian appearing on such child's behalf or such parent's, guardian's or custodian's interests conflict with the child's or in any other case in which the interests of the child require a guardian. The court, in any proceeding under this part resulting from a report of harm or an investigation report under §§ 37-1-401 — 37-1-411, shall appoint a guardian ad litem for the child who was the subject of the report. A party to the proceeding or the party's employee or representative shall not be appointed.
>
>   (2) Any guardian ad litem appointed by the court shall receive training appropriate to that role prior to such appointment.
>
> (b)(1) The court may also appoint a nonlawyer special advocate trained in accordance with that role and in accordance with the standards of the Tennessee Court Appointed Special Advocates Association (CASA) to act in the best interest of a child before, during and after court proceedings.
>
>   (2) The court-appointed special advocate shall conduct such investigation and make such reports and recommendations pertaining to the welfare of a child as the court may order or direct.

    (3) Any guardian ad litem or special advocate so appointed by the court shall be presumed to be acting in good faith and in so doing shall be immune from any liability that might otherwise be incurred while acting within the scope of such appointment.

TENN. CODE ANN. § 37-1-149 (2005); *see also* TENN. CODE ANN. § 36-1-101(d) (2005) ("In all [adoption and termination of parental rights] cases, when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed."); *King v. King*, 2008 Tenn. App. LEXIS 97, at *9-10 (Tenn. Ct. App. Feb. 22, 2008) ("The appointment of a guardian ad litem is not discretionary; it is mandatory in a proceeding to terminate parental rights if the termination is contested.").

    Guardians ad litem appointed pursuant to § 37-1-149 are further governed by Tennessee Supreme Court Rule 40, entitled "Guidelines for Guardians Ad Litem for Children in Juvenile Court Neglect, Abuse and Dependency Proceedings," which provides, in in its entirety, as follows:

    (a) Application.

These Guidelines set forth the obligations of lawyers appointed to represent children as guardians ad litem only in juvenile court neglect, abuse and dependency proceedings pursuant to Tenn. Code Ann. § 37-1-149, Rules 37 of the Tennessee Rules of Juvenile Procedure, and Supreme Court Rule 13. By adoption of these guidelines it is intended that they not be applied to proceedings in other courts that involve child custody or related issues.

    (b) Definitions.

As used in this rule, unless the context otherwise requires:

    (1) "Guardian ad litem" is a lawyer appointed by the court to advocate for the best interests of a child and to ensure that the child's concerns and preferences are effectively advocated.

9

(2) "Child's best interests" refers to a determination of the most appropriate course of action based on objective consideration of the child's specific needs and preferences. In determining the best interest of the child the guardian ad litem should consider, in consultation with experts when appropriate, the following factors:

(I) the child's basic physical needs, such as safety, shelter, food, clothing, and medical care;

(ii) the child's emotional needs, such as nurturance, trust, affection, security, achievement, and encouragement;

(iii) the child's need for family affiliation;

(iv) the child's social needs;

(v) the child's educational needs;

(vi) the child's vulnerability and dependence upon others;

(vii) the physical, psychological, emotional, mental, and developmental effects of maltreatment upon the child;

(viii) degree of risk;

(ix) the child's need for stability of placement;

(x) the child's age and developmental level, including his or her sense of time;

(xi) the general preference of a child to live with known people, to continue normal activities, and to avoid moving;

(xii) whether relatives, friends, neighbors, or other people known to the child are appropriate and available as placement resources;

(xiii) the love, affection and emotional ties existing between the child and the potential or proposed or competing caregivers;

(xiv) the importance of continuity in the child's life;

(xv) the home, school and community record of the child;

(xvi) the preferences of the child;

(xvii) the willingness and ability of the proposed or potential caretakers to facilitate and encourage close and continuing relationships between the child and other persons in the child's life with whom the child has or desires to have a positive relationship, including siblings; and

(xviii) in the case of visitation or custody disputes between parents, the list of factors set forth in Tenn. Code Ann. § 36-6-106.

(c) General Guidelines.

(1) The child is the client of the guardian ad litem. The guardian ad litem is appointed by the court to represent the child by advocating for the child's best interests and ensuring that the child's concerns and preferences are effectively advocated. The child, not the court, is the client of the guardian ad litem.

(2) Establishing and maintaining a relationship with the child is fundamental to representation. The guardian ad litem shall have contact with the child prior to court hearings and when apprised of emergencies or significant events affecting the child. The age and developmental level of the child dictate the type of contact by the guardian ad litem. The type of contact will range from observation of a very young or otherwise nonverbal child and the child's caretaker to a more typical client interview with an older child. For all but the very young or severely mentally disabled child, for whom direct consultation and explanation would not be effective, the guardian ad litem shall provide information and advice directly to the child in a developmentally appropriate manner.

(3) The obligation of the guardian ad litem to the child is a continuing one and does not cease until the guardian ad litem is formally relieved by court order. The guardian ad litem shall represent the child at preliminary, adjudicatory, dispositional and post-dispositional hearings, including the permanency plan staffings, court reviews, foster care review board hearings and permanency hearings. The guardian ad litem should maintain contact with the child and be available for consultation with the child between hearings and reviews. For a child who is very young or severely mentally disabled, the guardian ad litem should regularly monitor the child's situation through contacts with the child's caretakers and others working with the child and through periodic observations of the child.

(d) Responsibilities and duties of a lawyer guardian ad litem.

The responsibilities and duties of the guardian ad litem include, but are not limited to the following:

(1) Conducting an independent investigation of the facts that includes:

11

  (I) Obtaining necessary authorization for release of information, including an appropriate discovery order;

  (ii) Reviewing the court files of the child and siblings and obtaining copies of all pleadings relevant to the case;

  (iii) Reviewing and obtaining copies of Department of Children's Services' records;

  (iv) Reviewing and obtaining copies of the child's psychiatric, psychological, substance abuse, medical, school and other records relevant to the case;

  (v) Contacting the lawyers for other parties for background information and for permission to interview the parties;

  (vi) Interviewing the parent(s) and legal guardian(s) of the child with permission of their lawyer(s) or conducting formal discovery to obtain information from parents and legal guardians if permission to interview is denied;

  (vii) Reviewing records of parent(s) or legal guardian(s), including, when relevant to the case, psychiatric, psychological, substance abuse, medical, criminal, and law enforcement records;

  (viii) Interviewing individuals involved with the child, including school personnel, caseworkers, foster parents or other caretakers, neighbors, relatives, coaches, clergy, mental health professionals, physicians and other potential witnesses;

  (ix) Reviewing relevant photographs, video or audio tapes and other evidence; and

  (x) Engaging and consulting with professionals and others with relevant special expertise.

(2) Explaining to the child, in a developmentally appropriate manner:

  (I) the subject matter of litigation;

  (ii) the child's rights;

  (iii) the court process;

  (iv) the guardian ad litem's role and responsibilities;

  (v) what to expect before, during and after each hearing or review;

  (vi) the substance and significance of any orders entered by the court and actions taken by a review board or at a staffing.

 (3) Consulting with the child prior to court hearings and when apprised of emergencies or significant events affecting the child. If the child is very young or otherwise nonverbal, or is severely mentally disabled, the guardian ad litem should at a minimum observe the child with the caretaker.

 (4) Assessing the needs of the child and the available resources within the family and community to meet the child's needs.

 (5) Considering resources available through programs and processes, including special education, health care and health insurance, and victim's compensation.

 (6) Ensuring that if the child is to testify, the child is prepared and the manner and circumstances of the child's testimony are designed to minimize any harm that might be caused by testifying.

 (7) Advocating the position that serves the best interest of the child by:

  (I) Petitioning the court for relief on behalf of the child and filing and responding to appropriate motions and pleadings;

  (ii) Participating in depositions, discovery and pretrial conferences;

  (iii) Participating in settlement negotiations to seek expeditious resolution of the case, keeping in mind the effect of continuances and delays on the child;

  (iv) Making opening statements and closing arguments;

  (v) Calling, examining and cross-examining witnesses, offering exhibits and introducing independent evidence in any proceeding;

  (vi) Filing briefs and legal memoranda;

  (vii) Preparing and submitting proposed findings of facts and conclusions of law;

>    (viii) Ensuring that written orders are promptly entered that accurately reflect the findings of the court;
>
>    (ix) Monitoring compliance with the orders of the court and filing motions and other pleadings and taking other actions to ensure services are being provided;
>
>    (x) Attending all staffings, reviews and hearings, including permanency plan staffings, foster care review board hearings, judicial reviews and the permanency hearing;
>
>    (xi) Attending treatment, school and placement meetings regarding the child as deemed necessary.
>
> (8) Ensuring that the services and responsibilities listed in the permanency plan are in the child's best interests.
>
> (9) Ensuring that particular attention is paid to maintaining and maximizing appropriate, non-detrimental contacts with family members and friends.
>
> (10) Providing representation with respect to appellate review including:
>
>    (I) discussing appellate remedies with the child if the order does not serve the best interest of the child, or if the child objects to the court's order;
>
>    (ii) filing an appeal when appropriate; and
>
>    (iii) representing the child on appeal, whether that appeal is filed by or on behalf of the child or filed by another party.
>
> (e) Responsibilities and duties of a guardian ad litem when the child's best interests and the child's preferences are in conflict.
>
> (1) If the child asks the guardian ad litem to advocate a position that the guardian ad litem believes is not in the child's best interest, the guardian ad litem shall:
>
>    (I) Fully investigate all of the circumstances relevant to the child's position, marshal every reasonable argument that could be made in favor of the child's position, and identify all the factual support for the child's position;
>
>    (ii) Discuss fully with the child and make sure that the child understands the different options or positions that might be available, including the potential

benefits of each option or position, the potential risks of each option or position, and the likelihood of prevailing on each option or position.

(2) If, after fully investigating and advising the child, the guardian ad litem is still in a position in which the child is urging the guardian ad litem to take a position that the guardian ad litem believes is contrary to the child's best interest, the guardian ad litem shall pursue one of the following options:

(I) Request that the court appoint another lawyer to serve as guardian ad litem, and then advocate for the child's position while the other lawyer advocates for the child's best interest.

(ii) Request that the court appoint another lawyer to represent the child in advocating the child's position, and then advocate the position that the guardian ad litem believes serves the best interests of the child.

(3) If, under the circumstance set forth in subsection (b), the guardian ad litem is of the opinion that he or she must advocate a position contrary to the child's wishes and the court has refused to provide a separate lawyer for the child to help the child advocate for the child's own wishes, the guardian ad litem should:

(I) subpoena any witnesses and ensure the production of documents and other evidence that might tend to support the child's position;

(ii) advise the court at the hearing of the wishes of the child and of the witnesses subpoenaed and other evidence available for the court to consider in support of the child's position.

(f) Guardian ad litem to function as lawyer, not as a witness or special master.

(1) A guardian ad litem may not be a witness or testify in any proceeding in which he or she serves as guardian ad litem, except in those extraordinary circumstances specified by Supreme Court Rule 8, §§ EC 5-9, 5-10 and DR 5-101.

(2) A guardian ad litem is not a special master, and should not submit a "report and recommendations" to the court.

(3) The guardian ad litem must present the results of his or her investigation and the conclusion regarding the child's best interest in the same manner as any other lawyer presents his or her case on behalf of a client: by calling, examining and cross examining witnesses, submitting and responding to other evidence in conformance with the rules of evidence, and making oral and written arguments based on the evidence that has been or is expected to be presented.

15

TENN. S. CT. R. 40; *see also* TENN. R. JUV. P. 2(7) ("'Guardian ad litem' is a lawyer appointed by the court to protect the rights and interests of a child during the pendency of a proceeding involving the child and to advocate for the best interests of the child. In a dependency, neglect or abuse case the guardian ad litem must also ensure that the child's concerns and preferences are effectively advocated, pursuant to Tennessee Supreme Court Rule 40.").

Reasonable compensation for guardians ad litem "may be a charge upon the funds of the county upon certification . . . by the court . . . except that in the case of indigents, the state . . . shall pay for the guardian ad litem required by § 37-1-149 for proceedings . . . [and the] supreme court shall prescribe by rule the nature of the expense for which compensation may be allowed hereunder . . .[.]" TENN. CODE ANN. § 37-1-150(a)(3) (2005). The Tennessee Supreme Court, through the Tennessee Rules of Civil Procedure, has provided that guardian ad litem fees be taxed as costs. TENN. R. CIV. P. 17.03 ("The Court shall at any time after the filing of the complaint appoint a guardian ad litem to defend an action for an infant or competent person who does not have a duly appointed representative, or whenever justice requires. The court may in its discretion allow the guardian ad litem a reasonable fee for services, to be taxed as costs."); TENN. R. CIV. P. 54.04(2) (listing guardian ad litem fees among allowable discretionary costs that may be awarded to the prevailing party); *see also Perdue v. Green Branch Mining Co., Inc.*, 837 S.W.2d 56, 61 (Tenn. 1992); *In re Estate of Frazier*, 2006 Tenn. App. LEXIS 279, at *13-16 (Tenn. Ct. App. Apr. 28, 2008); *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

In support of his contention that Ms. Dewhirst's claim is not a priority domestic support obligation, the Debtor relies exclusively on the argument that the Referee, by striking the language

"This is a judgment that is an incident of Child Support" and inserting the words "for which execution may issue," did not intend for the guardian ad litem fees awarded Ms. Dewhirst to be as child support. The court disagrees. The only intent that can be inferred from the Referee's action is her intent to comply with the mandate of Tennessee Rules of Civil Procedure 17.03 and 54.04, which clearly require guardian ad litem fees be taxed as discretionary costs. It is clear that Ms. Dewhirst was appointed guardian ad litem to act in the best interests of "B.R.," an otherwise unrepresented minor child, and that she was awarded a reasonable fee of $1,850.00, to be taxed as costs against the Debtor. Based upon the comprehensive duties and obligations imposed upon a guardian ad litem under requirements set forth in § 37-1-149 and Tennessee Supreme Court Rule 40, it is equally clear that Ms. Dewhirst's actions on behalf of the minor child, "B.R.," were for the support and maintenance of the child during the proceedings in the Juvenile Court for Knox County, Tennessee. As such, the Judgment for guardian ad litem fees in the amount of $1,850.00 constitutes a domestic support obligation under § 101(14A) and, as such, is entitled to a priority of payment under the Debtor's Plan pursuant to § 507(a)(1). The Debtor's Objection to Claim will be overruled.

An order consistent with this Memorandum will be entered.

FILED: September 10, 2008

> BY THE COURT
>
> /s/ RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE